## ESTATE OF MRS. ASTOR.

*N. Y. Surrogate's Court; March,* 1888.

*Collateral inheritance tax.*] An executor or administrator, after quali-
fying, may at any time apply for the appointment of an appraiser,
and have the question, whether legacies, or other interests
passing under the will, or by intestacy, are liable to collateral in-
heritance tax, and if so, the amount, in order that he may pay the
tax without delay.

*It seems,* that the district attorney, on the application of the comptrol-
ler or county treasurer, or any party interested in the estate, may
equally apply.

*Appraising the estate.*] The value of property subject to tax is to be
appraised by an appraiser under the direction and subject to the
superior authority of the surrogate.

*The same; parties.*] Upon such application for the appointment of an
appraiser the legatees or other beneficiaries are not necessary par-
ties.

*The same; notice.*] The appraiser must give notice, by mail, to all
persons interested in the estate, or by law entitled to notice of pro-
ceedings affecting it.

*Final hearing.*] On the coming in of the report of the appraiser the
surrogate will fix a time for hearing the parties, with reference to
the final determination of the tax. The surrogate is not required
to make such application of his own motion until after the lapse of
eighteen months from the death of the decedent.

Order to show cause why an appraiser should not be
appointed and collateral inheritance tax paid on specified
legacies.

The executors of Mrs. Charlotte A. Astor, on February
15, 1888, applied on petition, stating probate of her will on
December 29, 1887, the terms of which gave specified lega-
cies, some of which were in money and others specific or
demonstrative, and that as the petitioners were advised and
believed, appraisal of some of the legacies was necessary to

determine the amount of tax due under the collateral inheritance law ; that no tax had been paid ; "that your petitioners desire to have it determined which of the same are liable to such tax, and to have the tax upon any such legacies fixed and determined in order that the same may be paid."

And thereupon took a citation requiring the legatees named, and Theodore W. Myers, comptroller of the city and county of New York, to appear and show cause why the tax should not be paid.

*Henry Hartman*, assistant district attorney (*John R. Fellows*, district attorney), for the comptroller, moved to dismiss the petition, on the ground that such a proceeding could only be instituted by the district attorney, on request, to the comptroller or county treasurer, citing sections 15, 16 and 17,* and Matter of Farley in this court.

---

* Those sections are as follows :

Laws of 1887, p. 921, c. 713, § 15. " The surrogate's court in the county in which the real property is situate of a decedent who was not a resident of the State, or in the county of which the decedent was a resident at the time of his death, shall have jurisdiction to hear and determine all questions in relation to the tax arising under the provisions of this act, and the surrogate first acquiring jurisdiction hereunder shall retain the same to the exclusion of every other.

§ 16. "If it shall appear to the surrogate's court that any tax accruing under this act has not been paid according to law, it shall issue a citation, citing the persons interested in the property liable to tax, to appear before the court on a day certain, not more than three months after the date of such citation, and show cause why said tax should not be paid. The service of such citation, and the time, manner and proof thereof, and fees therefor, and the hearing and determination thereon, and the enforcement of the determination or decree shall conform to the provisions of the Code of Civil Procedure, for the service of citations now issuing out of surrogate's courts, and the hearing and determination thereon and its enforcement. And the surrogate, or clerk of the surrogate's court, shall, upon the request of the district attorney, treasurer of the county, or comptroller of the county of New York, furnish, without fee, one or more transcripts of such decree as provided in section twenty-five hundred and fifty-three of the Code of

Estate of Mrs. Astor.

*Allen W. Evarts* (*Evarts, Choate & Beaman,* attorneys), for the petitioners, opposed the motion.

*Austin Abbott,* on behalf of the Hampton Institute legatees.—I. The legatees, the Hampton Institute, while having no objection to the question being brought before the court, in a prosecution by the district attorney, oppose the motion simply on the ground that they desired no unnecessary delay or expense, and that as in their view the court have jurisdiction and all the parties are present, it is unnecessary and inexpedient to consent to a dismissal. The fund is very large, the executors have proceeded with very commendable promptitude; and the interest which would be lost to the State, or the legatees, or by delay, is something like $30 per day.

The following view of the construction of the statute is respectfully submitted as the proper one, and supporting this objection to dismissal.

II. The natural interpretation of the statute, drawn from the reading of its sections in the order in which they stand, appears to confer ample jurisdiction on the surrogate to determine in this proceeding the question whether the tax

Civil Procedure, and the same shall be docketed and filed by the county clerk of any county in the State without fee in the same manner, and with the same effect as provided by said section, for filing and docketing transcripts of decrees of such courts.

§ 17. " Whenever the treasurer or comptroller of any county shall have reason to believe that any tax is due and unpaid under this act, after the refusal or neglect of the persons interested in the property liable to said tax, to pay the same, he shall notify the district attorney of the proper county, in writing, of such failure to pay such tax, and the district attorney so notified, if he have probable cause to believe a tax is due and unpaid, shall prosecute the proceeding in the surrogate's court in the proper county, as provided in section sixteen of this act, for the enforcement and collection of such tax. All costs awarded by such decree, that may be collected after the collection and payment of the tax to the treasurer or comptroller of the proper county, may be retained by the district attorney, hereafter elected or appointed, for his own use.

. Estate of Mrs. Astor.

should be paid. The leading provision of the statute (§§ 1 and 2) is, that the tax is imposed immediately upon the death of the decedent, the appraisal is to be directed " immediately after the death of the decedent," and " the surrogate shall thereupon assess and determine the value," and the tax " shall be immediately due and payable." The duty of appraisal, which under general tax laws, is imposed upon other officers, is here clearly imposed upon the surrogate, and an officer to be appointed by him.

III. The surrogate's court is also given " jurisdiction to hear and determine all questions in relation to the tax arising under the provisions of this act " (§ 15). This language in its natural scope and meaning, includes, besides the question of appraisal, previously specifically provided for, such questions, both of law and of fact, as may arise in determining whether property is or is not subject to the tax, by reason of the relationship or other legal status of the legatee.

IV. The reasons for making the surrogate's court the tribunal in the first instance for determining all questions arising under the act, are not far to seek. Those questions, so far as they are questions of fact, are largely identical with questions previously within the jurisdiction of the court, and necessarily to a greater or less extent determined in the ordinary proceedings of administration. Determining degrees of relationship, value of assets, statement of legacies, and to a very considerable extent the construction of testamentary provisions, both in reference to who is the legatee, designated or beneficial, and whether the legacy is contingent or vested, are questions already commonly determined in the administration of an estate in the surrogate's court. To send the same or some similar questions to be determined in the first instance, in another court, for the purpose of assessing a tax, would require in many cases a double litigation, and subject executors and administrators in some cases, to serious embarrassment.

V. The provisions of the statute in respect to procedure to determine whether the tax should be paid, first give a general

Estate of Mrs. Astor.

power to the court, making it its duty when it shall appear that a tax has not been paid, to cite the persons interested in the fund, "to show cause why said tax should not be paid." The natural and ordinary meaning of this is that those interested may have a day in court to establish their relationship to the decedent or other ground of exemption; the statute having previously given the surrogate jurisdiction of all questions in relation to the tax arising under the act. The provision for the issue of the citation (§ 16), does not prescribe any official application for it, and it requires the citation to cite "the persons interested," and directs that the service, proof, fees, hearing determination and its enforcement shall conform to the provisions of the Code of Civil Procedure, as to citations in surrogate's courts. By section 2514 of the Code, subd. 11, "the expression, 'person interested,' where it is used in connection with an estate or a fund, includes every person entitled, either absolutely or contingently, to share in the estate or the proceeds thereof, or in the fund, as husband, wife, legatee or next of kin, heir, devisee, assignee, grantee or otherwise, except as a creditor." This includes the comptroller, who is entitled to receive the tax.

VI. The provisions of section 15, directing a prosecution by the district attorney, appear to be intended to apply to that class of cases in which the executor or administrator is in default, or the legatees or other persons subject to the tax have neglected or refused to pay it. It is not a proceeding merely to show cause why the tax should not be paid, although it may properly involve that. It is a proceeding which cannot be initiated until after there has been such refusal or neglect to those interested to pay the tax as will justify the comptroller in officially notifying the failure to the district attorney, and the district attorney in instituting a prosecution for the enforcement and collection of the tax. If it were contemplated that the only case in which a citation could be issued under section 16, is a case where there has been such delay and neglect that it is the duty of the district attorney

to prosecute, there will be no significance to the third, the last sentence of section 16 which entitled the district attorney or comptroller to a transcript, without fee, of any decree obtained on a citation to show cause why the tax should not be paid. The object of that provision seems to be to secure readily the means of enforcement of decrees on citations issued as in the present proceeding, on the petition of some one other than the district attorney.

VII. The only effect of construing the statute as not authorizing any one but the district attorney to proceed, will be to require executors and administrators to suffer sufficient delay in their proceedings to justify the comptroller in treating them as in the wrong. It is not obvious how this can diminish the number or complexity of the cases which will require adjudication, while on the other hand it is obvious that in many cases it will cause a loss, both to the State by the delay of a tax while it does not bear interest, and to the estate or the legatees, or both, in prolonging the period when assets ready for payment must lie uninvested awaiting the determination of the questions preliminary to distribution.

VIII. The case of Farley, relied upon by the district attorney, presented a different question. There the executor on notice only to the legatee asked to be relieved from paying the tax on the ground of alleged exemption, and it was clearly well held that the surrogate had not jurisdiction to relieve him from responsibility on such an application; but there the county treasurer or comptroller was not a party, but the proceeding was in fact *ex parte*.

I. *March* 10, 1888.

RANSOM, Surrogate.—The substance of this application is for the appointment of an appraiser, provided to be appointed upon the application of an interested party, according to the provisions of chapter 713 Laws of 1887. The petitioner has made all the legatees named in the will of the decedent, and

the comptroller, parties to this proceeding, and served them with citation to show cause why the collateral inheritance tax should not be paid. Upon the return day of the citation all the parties appeared before the court, and the respondents handed up briefs upon the proposition that they are not liable to the tax, being corporations or societies exempt by law from taxation, and therefore relieved from the payment of the tax on collateral inheritances.

I have examined the statute under which this tax may be assessed, and I am of opinion that the legatees under a will and the respondents in this proceedings are not proper parties and have presently no standing in court. I am preparing my views with some care for the purpose of indicating what I deem to be the proper practice in cases of this sort. As it is probably important that petitioner be afforded the relief to which he is entitled, speedily, I will decide the questions presented on this application some little time before I shall be able to file my opinion now in course of preparation. An order for the appointment of an appraiser in this proceeding may be submitted.

II. *March* 19, 1888.

RANSOM, Surrogate—I have already written a memorandum in this proceeding, announcing my decision granting the application of the executors for the appointment of an appraiser. I have deemed it proper to supplement that memorandum by some observations upon the construction to be given the act (chap. 713, *Laws of* 1887), which I believe will be useful to parties interested in estates subject to tax under the provisions of that act; and also the act (chap. 483, *Laws of* 1885), which in all the respects now under consideration, is substantially, if not precisely, similar.

This legislation in form and substance is justly entitled to severe condemnation for great looseness and incoherence of expression. There is no symmetry in its provisions, and it is impossible to be certain of the intention of the law-

makers in respect of the various steps which it may be nec-
essary to take to effectuate its purpose. And if much is
required by me to be done to put in motion the cumber-
some and awkward machinery set up for the collection of
taxes upon collateral inheritances, etc., which may seem to
be unnecessary, the cause therefor must be looked for within
the halls of legislation, where this anomolous statute was
invented and sent forth to confuse, and therefore exasperate
the personal representatives of deceased persons and the
courts, by its glaring inconsistencies and absurdities. After
much patient reading and re-reading of this act, I have con-
cluded upon a course of procedure which I hope and believe
will bear the test of superior judicial investigation.

Fortunately, the constitutionality of the law cannot now
be mooted. The court of appeals has settled that (*Re* Mc-
Pherson, 104 *N. Y.* 306).

The object of the act, as disclosed by its title, is " to tax
gifts, legacies and collateral inheritances in certain cases."

Section 1 provides that " all property which shall pass
by will, or by the intestate laws of this State, from any per-
son who may die seized or possessed of the same . . . other
than to or for the use of his or her father, mother, husband,
wife, child, brother, sister, the wife or widow of a son, or
the husband of a daughter, or any child or children adopted
as such in conformity with the laws of the State of New
York . . . shall be and is subject to a tax of five dol-
lars on every hundred dollars of the clear market value of
such property . . . to be paid to the comptroller of
New York for the use of the State ; and all administrators,
executors and trustees shall be liable for any and all such
taxes until the same shall have been paid . . . provided
that an estate which may be valued at a less sum than five
hundred dollars shall not be subject to such duty or tax."

It is not my purpose now to attempt to answer whether
the expression " an estate," in the last sentence of this sec-
tion, means the whole estate of the deceased person, or only
so much thereof as passes to a person other than one of

those exempted from the tax. This question may be presented some time, as for instance in case of a will bequeathing an entire estate worth over five hundred dollars to two or more persons in amounts of less than that sum each. Nor shall I speculate upon the office and purpose of the word "duty," the last word but two in this section. It seems to be synonymous with the last word, " tax," but it may be that it was interpolated for the purpose of embellishment.

To my best understanding section 2 provides that, when any " grant, gift, legacy or succession, upon which a tax is imposed by section 1, shall be an estate, income or interest for a term of years or for life . . . the entire property or fund by which such estate, income or interest is supported, or of which it is a part, shall be appraised immediately after the death of the decedent at what was the fair market value thereof at the time of the death of the decedent, in the manner hereinafter provided (see § 13), and the surrogate shall thereupon assess and determine the value of the estate, income or interest subject to said tax, in the manner recorded in section 13 of this act."

By reference to section 13 for " recorded " provisions, we find that the value of the estate is to be ascertained by an appraiser, who shall be some " competent person appointed for that purpose, who shall appraise the same at its fair market value," and upon his report the surrogate shall fix the then cash value of estates, annuities, life estates, etc.

Thus it seems by section 2, the surrogate is to appraise in person, otherwise how can he " determine" the value of the estate? And by section 13, the appraisement is to be made by another officer, whose appraisement ought to be final, if made in good faith. Reading these two sections of the act together, I believe the value of all estates subject to the tax must be ascertained by an appraiser, before whom all parties interested have the right to appear. This must be so, else why the provisions " recorded " in section 13, requiring the appraiser to forthwith give notice to " all persons known to

have or claim an interest in such property of the time and place he will appraise such property." And the appraiser must also give such notice to such persons as the surrogate may by order direct. Thus it may seem that the appraiser has another duty separate and apart from the surrogate, viz. : to exercise his own judgment as to what persons shall have notice, and then look to the surrogate's order for the names of any other persons discovered and designated by him.

I shall not commit myself to such a construction. The act, considered in its entirety, beyond reasonable doubt, I think, intends that the surrogate shall be the superior authority upon all questions, including that of value of the estate subject to the tax ; and means that he shall act judicially, although it is a new and strange duty imposed upon a judge that he shall become an appraiser of the value of all kinds of property which may be the subject of a gift or legacy, and an assessor of taxes to be levied thereon. Nevertheless, such seems to be the additional function bestowed upon the surrogates of this State by this law, and they will, no doubt, faithfully strive to do their full duty in this new field of labor.

This section (2) further provides : "And the tax prescribed by this act shall be immediately due and payable to the treasurer of the proper county, and in the city of New York to the comptroller thereof, and together with the interest thereon shall be and remain a lien on said property until the same is paid." And then, in the next sentence of this same section, it is declared in effect, almost in express words, that the tax shall not then become due and payable if the person or persons beneficially interested in the property chargeable with said tax may elect not to pay the same until the happening of an event which may never happen at all, to wit : until they shall come into the actual possession or enjoyment of such property. I am curious to know just how one can come into the " enjoyment " of a bit of property, and not at the same moment come into its " possession." The

framer of this act has not given us any information on that point.

Section 4 also re-states the point of time when "all taxes imposed by this act become due and payable, unless otherwise herein provided for," viz.: at the death of the decedent; and then we find in the very next sentence that if they are paid within eighteen months, no interest shall be charged and collected thereon; but if not so paid, interest at the rate of ten per cent. per annum shall be charged and collected from the time said tax accrued, provided if it (the tax) is paid within six months from the accruing thereof, a discount of five per cent. shall be allowed and deducted from said tax; and further, that if the executors, administrators or trustees do not pay such tax within eighteen months from the death of the decedent, they shall be required to give a bond in the form and to the effect prescribed in section 2.

We have here in the same section certain conditions and limitations, all dependent upon the point of time when the tax accrues, and another condition and a positive requirement dependent upon the date of decedent's death. It seems reasonably certain that the tax must be said to have "accrued" at the date of decedent's death, although it might be insisted with force of reason that it has not accrued until the appraisal has been made and the amount finally assessed by the surrogate, after the numerous hearings upon the one question—that of value of property and liability for the tax—have been given to all persons interested. It seems equally certain, however, that a tax cannot be said to be "due and payable" at a time when the party liable for its payment is not bound to pay it.

When we have applied the provisions of this act to real cases in the varied phases of the rights of persons, as they will no doubt be made to appear, we may unfathom its hidden mysteries, and that which now seems so dark and dubious may then become clear and open to our mental vision. No doubt remains, I think, but that for the full period of

eighteen months from the date of decedent's death, the persons liable to pay the tax may be relieved from its payment, although by section 16, it is made the duty of the surrogate's court (not the surrogate), if it shall appear to that court "that any tax accruing under the act has not been paid according to law," to issue a citation, etc. And, further, by section 17, we find that whenever the treasurer or comptroller of any county shall have reason to believe any tax is due and unpaid under this act (and we have seen twice provided that it shall be "due and payable" at decedent's death), he shall notify the district attorney in writing, and then that officer is required to sit in judgment on the case made out by the treasurer or comptroller to see whether he (the district attorney) has probable cause to believe a tax is due and unpaid. Mark the expression "a tax," instead of "the tax." This may be a side light to be regarded upon the question—to whom has been committed the final appraisal and assessment so far as the State is concerned? But it seems to me that the decision of the surrogate's court upon that subject is final upon the rights of the State in the premises, except, of course, for fraud or refusal to act.

For present purposes we may now pass on to section 13 of this act (ch. 713), and briefly as may be possible for our attempt to a fair understanding of its provisions, consider how it shall be carried out. This section provides the mode of fixing the "value of property of persons whose estates shall be subject to the payment of said tax." I fancy that the phrase "whose estate shall be subject to the payment of said tax," means the estates of decedents; although we must admit that this is not literally true, for if anything can be said to be clearly expressed in this law, it is the fact that only certain parts and portions of such estates are subject to it. Nevertheless, I hold as above stated. But for execution of the law we should read this section as if the words of this phrase were not there. I hold, therefore, that the surrogate acting judicially as a court must, upon the application of an "interested party," who may be any person hav-

ing an interest in the whole estate, who is now designated by law, and also the county treasurer, and in New York, the comptroller, represented by the district attorney, and on failure of any such person to apply upon his own motion (no time is named when he shall move himself) appoint some competent person as appraiser from time to time if occasion requires, whose duty it shall be to forthwith give notice by mail to all persons known to have or claim an interest in such property, and to such persons as the surrogate may by order direct, of the time and place he will appraise such property.

Under my construction of this section and procedure spelled out, I fail to perceive that there would ever be more than one occasion to appoint an appraiser. I hold also that the order of the surrogate appointing the appraiser should designate the persons upon whom the appraiser shall forthwith serve notices by mail; and these persons, for the sake of certainty and finality of proceeding, should be all who are now by law interested in the whole estate and by law entitled to notice of all proceedings affecting the same. This section does not provide for the length of notice. I hold, therefore, that it is the duty of the surrogate to fix it; and the facts in each case must be his guide in that regard.

All parties notified by the appraiser have the right to attend before him and to be heard upon the question of value of the property and its or their liability to the tax. The appraiser must report to the surrogate the fair market value of the property he deems subject to the tax, together with his proceedings and any and all facts known to him germain to the duties imposed upon him by the order of his appointment. He has not, however, any right under this act to administer oaths and take testimony upon any of the questions to be considered by him. This seems a most regretful lack of power, which should have been conferred upon him for obvious reasons. On the coming in of the appraiser's report, the surrogate, it is provided, shall forthwith assess and fix the then cash value of all estates.

Whether there might not be a real difference between the "fair market value," and the "cash value" of all estates, and hence more confusion, I do not stop to discuss. I hold that the two expressions mean the same thing in this act.

The section provides that the surrogate shall first assess, etc., and then mail notices, etc. I hold that just the reverse of this shall be our practice.

On the coming in and filing in the surrogate's court of the appraiser's report, the surrogate shall give notice thereof by mail to the same parties immediately. He—the appraiser—must act "immediately," "forthwith" in respect of the same thing precisely. I feel compelled, however, to determine that the lawmakers intended these to be convertible terms, and that the requirement in this regard will be met by such prompt notice, as the surrogate shall deem reasonable under the facts of each proceeding.

The notice of the surrogate must fix the day and hour when he will hear any of said parties in regard to the subject matter which had been committed to the appraiser by the order for his appointment; and thereafter the surrogate must forthwith assess and fix the true cash value of all estates.

The last paragraph of this section pretty plainly points out the grounds and mode of appeal from this assessment by the surrogate. But it is remarkable that the appeal is from the surrogate to the surrogate. One advantage has been gained, however, by the State, which in these devious ways has been seeking this tax—persons dissatisfied must give security for whatever tax shall be fixed by the court, and their time to appeal is limited to sixty days.

Section sixteen of this act makes it the duty of the surrogate's court to issue a citation citing the persons interested in the property liable to the tax to appear before the court on a day certain to show cause why the said tax should not be paid. Section seventeen, which might well have preceded section sixteen, I think, makes it the duty of the county

Estate of Mrs. Astor.

treasurer or comptroller, whenever he shall have reason to believe that any tax is due and unpaid under the act, after the refusal or neglect of the persons interested in the property liable to the tax to pay the same, to notify the district attorney in writing.

Section eighteen provides that "the surrogate and county clerk of each county shall every three months make a statement in writing to the county treasurer or comptroller of his county of the property from which, or the party from which [sic], he has reason to believe a tax under this act is due and unpaid."

Reading these three sections (16, 17, and 18) as one, and having due regard to the other provisions of the act, I hold that the surrogate should not take any steps upon his own motion until the expiration of eighteen months after the date of the decedent's death. At that point of time he should ascertain from the proceedings generally in his court relating to the estate, from the will, if there be one, and from any source open to him, whether "any tax accruing under this act has not been paid according to law," and if it shall appear to him that it has not been paid, to issue the citation and take the proceedings provided for in section sixteen. I am of opinion also that, until the expiration of eighteen months after the date of decedent's death, the comptroller and district attorney ought not to initiate any proceeding except on the former's application, as I have already shown, for the appointment of an appraiser; because the intent of the act is undoubtedly to relieve the estate and persons interested therein, and the administrators, executors or trustees, at their option, from the payment of the tax during eighteen months next succeeding the date of decedent's death.

I hold that in the case of a will, under the provisions of which the legacies subject to this tax are in cash, the appointment of an appraiser is unnecessary. The surrogate on application, or on his own motion, shall appraise the value of this species of property and assess the tax by order,

and thereupon give notice to all persons as hereinbefore shown.

Section twenty seems to exclude from record in the book to be kept by the surrogate, cash, subject to the tax. This is not true of the real intent of this section read in the light of the other provisions of the act. This book must contain all that is specifically mentioned in this section, and also the property in cash subject to the tax and the tax assessed thereon.*

---

* The order as settled directed as follows.

Ordered, that D. Van Schaick of the city of New York be and he is hereby appointed as appraiser to appraise at their fair market value, the legacies given by the last will and testament of Charlotte Augusta Astor, deceased, and to make a report thereof in writing to the surrogate of the county of New York, together with a statement of which of such legacies are liable for and which are exempt from the payment of the tax imposed by chapter 713 of the Laws of 1887, and that said appraiser gave twelve day's notice by mail of the time and place he will appraise such legacies to all persons interested in the estate of said Charlotte Augusta Astor, as husband, next of kin or heirs at law, viz.: to John Jacob Astor, her husband, at 21 West 26th street, New York City, and to William W. Astor, her only next of kin and heir at law, at No. 21 West 26th street, New York City, and to all the legatees named in her last will and testament aforesaid, viz.: to [*naming them*].